UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JONES AND ASSOCIATES, INC., and
JAMES JONES,

    Plaintiffs,

    v.

THE DISTRICT OF COLUMBIA, and
ROQUE GERALD,

    Defendants.

Civil Action No. 10-00461 (JDB)

## MEMORANDUM OPINION

Jones and Associates, Inc., ("J&A") and Dr. James Jones (collectively, "plaintiffs") have brought suit against the District of Columbia and Roque Gerald, Director of the District Child and Family Services Agency ("defendants"), regarding contracts J&A had with the District to provide independent living services to older youth in the D.C. foster care system. Jones is suing both "[i]ndividually and [i]n [his] [c]apacity as CEO" of J&A, and J&A is suing on its own behalf and on behalf of foster care youth who qualify for its services. Am. Compl. [Docket Entry 7] at 1. Plaintiffs' only federal claim is that defendants' contracting process has violated their Fifth Amendment due process rights.[1] The vast majority of plaintiffs' suit consists of various contract claims under D.C. law. Defendants have moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They argue that J&A does not have standing to sue on

---

[1] Separate from any count and unrelated to any allegations in their amended complaint, plaintiffs request a declaration that defendants violated their First Amendment rights "due to [their] retaliatory customs and practices." Am. Compl. ¶ 143(b). Plaintiffs, however, fail to identify any speech for which they suffered retaliation.

behalf of foster care youth who qualify for its supervision and that Jones does not have standing to sue in his individual capacity. Defendants also contend that plaintiffs fail to state a claim in any of their six counts. Significantly, defendants argue that because plaintiffs fail to state a federal claim, this Court "should decline to exercise supplemental jurisdiction over any of plaintiffs' remaining claims." Defs.' Mot. to Dismiss [Docket Entry 11] at 13.

For the reasons detailed below, the Court finds that plaintiffs fail to state a federal claim. Moreover, the Court declines to exercise supplemental jurisdiction over plaintiffs' remaining D.C.-law claims. Hence, the case will be dismissed in its entirety.

## BACKGROUND

J&A has provided independent living program (ILP) services to foster care youth between the ages of sixteen and twenty-one for the District of Columbia's Child and Family Services Agency since 2003. Am. Compl. ¶¶ 5-6. Plaintiffs allege that defendants underpaid them for ILP services that plaintiffs rendered between 2004 and 2009. Specifically, plaintiffs contend that during the 2004 to 2005 contract period, the District of Columbia "threaten[ed] J&A with" a series of "'take it or leave it' deal[s]," and insisted on a significantly lower rate than J&A's best offer. Id. ¶ 35. Plaintiffs allege that they signed these contracts with the District "under protest." ¶¶ 52, 55. With respect to contracts between 2005 and 2008, plaintiffs maintain that defendants engaged in a "bait and switch" scheme whereby they would accept a proposed price for services and then unilaterally reduce that price. Id. ¶¶ 55, 70, 76, 83. Moreover, plaintiffs contend that they rendered services for the first week of 2009 without payment. Id. ¶¶ 87-91.

Finally, plaintiffs allege that they "(J&A and Dr. Jones) made a series of loans to [d]efendant (CFSA) as mandated by" D.C. Mun. Regs. tit. 29, § 6307.2(d) (2011). Id. ¶ 93. That regulation provides that in order to operate an ILP, an operator, such as J&A, must show

"[d]ocumentation of sufficient funds on hand to operate the independent program for at least three months." D.C. Mun. Regs. tit. 29, § 6307.2(d). Plaintiffs state that "J&A has made repeated requests to the [d]efendant (CFSA) for repayment of these loans." Id. ¶ 94. To evidence these "loans," plaintiffs have attached personal checks from Jones made out to J&A and describe these checks as "funds loaned to J&A ILP." Id. Ex. 30.

Based on these allegations, Jones has brought suit both "[i]ndividually and [i]n [his] [c]apacity as CEO" of J&A and J&A has brought suit on its own behalf and on behalf of the foster care youth who qualify for its services. Plaintiffs' sole federal claim is that the "policies and practices of the [d]efendants . . . deprived [them] of . . . property rights without due process of law" in violation of the Fifth Amendment. Id. ¶¶ 96-98. Plaintiffs seek a declaration that this treatment is unconstitutional and request damages under 42 U.S.C. § 1983. Id. ¶¶ 143(a), 145. Plaintiffs also include multiple D.C.-based contract claims supported by these same allegations.

Defendants have moved to dismiss for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. Defendants only object to subject-matter jurisdiction as to Jones's suit in his individual capacity and as to J&A's suit on behalf of foster care youth who qualify for its services. Although defendants contend that all of plaintiffs' claims fail to state a claim upon which relief can be granted, they specifically argue that "[i]n light of [plaintiffs'] failure to identify a viable claim under federal law, the Court should decline to exercise supplemental jurisdiction over any of [p]laintiffs' remaining claims." Defs.' Mot. to Dismiss 13.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(1), "the plaintiff bears the burden of establishing that the

court has jurisdiction." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). A court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, (1993); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997). However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the allegations set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

With respect to a motion to dismiss for failure to state a claim, all that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. This amounts to a "two-pronged approach" under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." Id. at 1950-51.

The notice pleading rules are not meant to impose a great burden on a plaintiff. See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002). When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. See Leatherman, 507 U.S. at 164; Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Twombly, 550 U.S. at 555-56). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." Kowal, 16 F.3d at 1276. Nor need the court accept "a legal conclusion couched as a factual allegation," or a "naked assertion[] [of unlawful misconduct] devoid of further factual enhancement." Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted).

## DISCUSSION

Defendants object to Jones's individual standing and J&A's standing on behalf of foster care youth. Moreover, defendants contend that plaintiffs fail to state a federal claim upon which relief can be granted, and thus that this Court should decline to exercise supplemental jurisdiction over plaintiffs' state (i.e., D.C.) law claims. The Court will address each of these issues in turn.

**I.      Standing**

Article III of the U.S. Constitution "limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies,'" Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc., 454 U.S. 464, 471 (1982), and the doctrine of standing serves to identify those "'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III," Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  To establish the "irreducible constitutional minimum of standing," a plaintiff must allege (1) an "injury in fact," defined as "an invasion of a legally protected interest which is (a) concrete and particularized," and (b) "actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) a likelihood "that the injury will be redressed by a favorable decision." Id. at 560-61 (internal quotation marks and citations omitted).  In order for an injury to be "concrete and particularized," it must "affect the plaintiff in a personal and individual way." Id. at 560 n.1.

Although defendants contend that J&A does not have third-party standing to sue on behalf of youth qualifying for its services, the Court need not address third-party standing as plaintiffs have failed sufficiently to allege any injury-in-fact to these foster care youth.  Although plaintiffs twice mention injury to foster care youth, these alleged injuries are merely "conjectural [and] hypothetical," Lujan, 504 U.S. at 560.  First, plaintiffs allege that "the procurement and contract practices imposed on J&A *potentially* expose[] foster care children to increased irreparable and ongoing physical, mental, and emotional harm." Am. Compl. 3-4 (emphasis added).  Second, plaintiffs contend that "[t]he Agency's repeated false instigations and acts of bad faith put foster care youth *in continuing jeopardy* of abrupt, untimely, and unjustified removal

from J&A, placing the residents at risk for unnecessarily interrupted and discontinued medical, emotional, educational and transitional services." Id. ¶ 46 (emphasis added). Potential harms and possible placement in "jeopardy" are precisely the type of "conjectural [and] hypothetical" injuries that fail to satisfy Article III standing requirements. Lujan, 504 U.S. at 560.

Defendants also object to Jones's standing in his individual capacity because they contend that "[a] partner may not sue individually to recover damages for an injury to the partnership."[2] Defs.' Reply [Docket Entry 15] at 4. Regardless of whether Jones has Article III standing to sue in his individual capacity, he does not have prudential standing to sue because of the shareholder standing rule. The "question of standing 'involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs, 417 F.3d 1272, 1287 (D.C. Cir. 2005) (quoting Bennett v. Spear, 520 U.S. 154, 162 (1997)). One of the prudential requirements of standing is that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Franchise Tax Bd. of California v. Alcan Aluminium Ltd., 493 U.S. 331, 336 (1990) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)). The Supreme Court has explained that "[r]elated to th[e] principle" of third-party standing "is the so-called shareholder standing rule" which "is a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." Id.; see also Am. Airways Charters, Inc. v. Regan, 746 F.2d 865, 873 n.14

---

[2] Plaintiffs never explain what it means for Jones to sue "[i]n [his] [c]apacity as CEO of [J&A]." Am. Compl. 1. The Court understands Jones's suit in this capacity to be an alternative way of pleading J&A's claims.

(D.C. Cir. 1984) ("No shareholder—not even a sole shareholder—has standing in the usual case to bring suit in his individual capacity on a claim that belongs to the corporation.").

To determine "whether a shareholder's claims are purely derivative of the corporation's claims for standing purposes and thus barred by the shareholder standing rule, courts apply the law of the state of incorporation." Cheeks v. Fort Myer Constr. Co., 722 F. Supp. 2d 93, 108 (D.D.C. 2010) (citing Harpole Architects, P.C. v. Barlow, 668 F. Supp. 2d 68, 76 (D.D.C. 2009)). Because J&A is a D.C. limited partnership, Am. Compl. ¶ 1, this Court will apply D.C. law. Although D.C. courts have not definitively articulated a test for evaluating whether a partner's claim is derivative of the partnership's, D.C. courts have held that to sue directly, a corporation's shareholder "must identify a legal interest that has been directly or independently harmed, i.e., a 'special injury' that does not derive from the injury to the corporation." Harpole Architects, 668 F. Supp. 2d at 77 (citing Labovitz v. Wash. Times Corp., 172 F.3d 897, 901 (D.C. Cir. 1999)); see also Estate of Raleigh v. Mitchell, 947 A.2d 464, 470 (D.C. 2008) ("Since the [plaintiff] had no legal interest in the real property belonging to the corporation, it could not sue individually to redress any alleged wrongs against the corporation's property interests.").

To the extent that the District of Columbia has not announced a definitive rule on partner standing, "D.C. courts have often looked to Delaware for guidance on matters of corporate law." Cheeks, 722 F. Supp. 2d at 109 n.9 (citing Harpole Architects, 668 F. Supp. 2d at 76, 77 n.4). Under Delaware law, "[t]he test for distinguishing direct from derivative claims in the context of a limited partnership is . . . [i]f the injury is one that affects all partners proportionally to their pro rata interests in the corporation, the claim is derivative." Anglo American Sec. Fund, L.P. v. S.R. Global Intern. Fund, L.P., 829 A.2d 143, 149-50 (Del. Ch. 2003). As the Delaware Court of

Chancery has explained, "[i]n a derivative action the plaintiff sues for an injury done to the partnership and any recovery of damages is paid to the partnership." Id. at 150.

Under these tests, Jones's claims are unquestionably derivative. The contracts at issue are all between J&A and the District of Columbia. Moreover, defendants' alleged failure to repay loans was a failure to repay the partnership, not Jones himself. As plaintiffs allege, Jones wrote personal checks which plaintiffs characterize as "funds loaned to J&A ILP," and it was "J&A [that] made repeated requests" to defendants "for repayment." Am Compl. ¶ 94, Ex. 30. Indeed, Jones's sole argument in support of his individual standing—that he "is personally liable for the debts and obligations of J&A," Pls.' Opp. 10—recognizes that his claim is derivative. Accordingly, neither Jones in his individual capacity, nor J&A on behalf of the named foster care youth, may proceed with their claims.

## II.     Plaintiffs' Due Process Claim

Plaintiffs contend that the "policies and practices of [d]efendants . . . deprived [them] of . . . property rights without due process of law" in violation of the Fifth Amendment. Am. Compl. ¶¶ 96-98. Plaintiffs' claims, however, amount to no more than garden-variety contract claims. Plaintiffs allege three ways in which defendants deprived them of their "property interest in the[ir] contracts": (1) defendants bargained coercively by employing a "take it or leave it" policy; (2) defendants underpaid them for their services under the "bait and switch" scheme and by a failure to repay "loans"; and (3) defendants were unjustly enriched for the days that plaintiffs rendered services without a contract and without compensation. Am. Compl. ¶ 35, 55, 70, 76, 83, 90, 94, 99. Each of these claims is a classic contract claim for which plaintiffs can seek relief through D.C.'s administrative contract review procedure or in D.C. courts. See D.C. Code §§ 2-

359.08, 2-360.03; Davis & Assocs. v. Williams, 892 A.2d 1144, 1150 (D.C. 2006). Although plaintiffs point to some serious problems in the Child and Family Services Agency's contracting process, see Am. Compl. Ex. 1 (D.C. Auditor, Audit of CFSA's Contracting and Quality Assurance Procedures (2008)), plaintiffs never dispute that any loss they suffered can be addressed through a suit in a D.C. court or through D.C.'s administrative contract review process.

As this Court has explained, "'[a] claim that a government agency has violated a party's right to due process by refusing performance under a contract . . . is substantively indistinguishable from a breach of contract claim.'" LG Elec. U.S.A., Inc. v. Dep't of Energy, 679 F. Supp. 2d 18, 34 (D.D.C. 2010) (quoting Suburban Mortg. Assocs. v. Dep't of Housing & Urban Dev., 480 F.3d 1116, 1128 (Fed. Cir. 2007)). And it is well-established that when the government "makes ordinary judicial process available to [an entity] for resolving its contractual dispute, that process is due process." Lujan v. G & G Fire Sprinklers, Inc., 532 U.S. 189, 197 (2001). Plaintiffs do not contend that they have been deprived of such "ordinary judicial process." Id. Again, they can seek review of these contracts both administratively and through a contract suit in a D.C. court.

Plaintiffs, nevertheless, argue that the District "violate[d] [their] due process right to be free of contracting decisions that are based upon 'bias, bad faith, improper motive, lack of uniformity, and lack of impartiality.'" Pls.' Opp. 19 (citing Ervin & Assocs., Inc. v. Dunlap, 33 F. Supp. 2d 1, 8 (D.D.C. 1997)). Ervin, decided before the Supreme Court clearly held that due process only requires that a state "make[] ordinary judicial process available to [an entity] for resolving . . . contractual dispute[s]," G & G Fire Sprinklers, 532 U.S. at 197, focuses primarily on whether a plaintiff had a "property interest" in "contracts [that] would have been awarded to

-10-

him, but for distortion of the procurement process." Ervin, 33 F. Supp. 2d at 9. The case does not discuss whether a plaintiff had a "contractual dispute" for which "ordinary judicial process [was] available." G & G Fire Sprinklers, 532 U.S. at 197. To the extent that Ervin dealt with a contractual dispute, there would be no due process violation if the Ervin plaintiff had access to ordinary judicial process for his claim, as plaintiffs unquestionably have here. Accordingly, Ervin is inapposite, and plaintiffs cannot proceed with their federal claim.[3]

## III. Supplemental Jurisdiction

Because this Court has decided to dismiss plaintiffs' sole federal claim, it will decline to exercise supplemental jurisdiction over the remaining D.C.-law claims. The Supreme Court has explained that "a federal court should consider and weigh in each case . . . the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). "Generally, a federal court 'should decline the exercise of jurisdiction' . . . where the federal claims are resolved early in the litigation leaving only state law claims." Amiri v. Gelman Mgmt. Co., 734 F. Supp. 2d 1, 4 (D.D.C. 2010) (quoting Carnegie-Mellon, 484 U.S. at 350). In light of plaintiffs' failure to state a federal claim, the Court can identify no reason to retain jurisdiction over any remaining claims brought under D.C. law.[4]

---

[3] In their opposition, plaintiffs contend that defendants also violated their substantive due process rights. Pls.' Opp. [Docket Entry 14] at 20-22. Plaintiffs' amended complaint, however, does not include any allegation regarding substantive due process. Hence, this Court will not consider plaintiffs' substantive due process argument.

[4] Although plaintiffs' remaining counts request recovery pursuant to D.C. law, plaintiffs seek to invoke this Court's jurisdiction pursuant to the "federal mandates of Lashawn A. v. Fenty." Am. Compl. 2; see LaShawn A. v. Kelly, 887 F. Supp. 297 (D.D.C. 1995). This Court, however, has already found that this case is not related to Lashawn. [Docket Entry 8]. Plaintiffs

## **CONCLUSION**

For the reasons explained above, the Court will grant defendants' motion to dismiss and decline to exercise supplemental jurisdiction. A separate Order accompanies this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: July 18, 2011

---

fail to offer, and it is difficult to fathom, any theory by which a party can invoke federal jurisdiction by relying on an order from an unrelated federal case.